**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KENNETH SHEA MIDDLETON,

     Plaintiff,

v.                                          Civ. No. 19-1182 GBW/GJF

DANIEL VASQUEZ, *et al.*,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

     This matter comes before the Court on Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment on Plaintiff's Complaint and for Qualified Immunity. *Doc. 4.* Having reviewed the Motion and the attendant briefing (*docs. 4, 13, 14*), and being otherwise fully advised regarding relevant case law, the Court GRANTS Defendants' Motion to Dismiss as to Defendant City of Carlsbad d/b/a Carlsbad Police Department, DENIES Defendants' Motion to Dismiss as to Defendants Daniel Vasquez and Israel Rodriguez, and DENIES Defendants' Motion for Summary Judgment.

**I.    PROCEDURAL POSTURE**

     This case arises from Plaintiff's arrest on May 25, 2018, for allegedly obstructive conduct during a traffic stop in which Plaintiff was a passenger. On December 17, 2019, Plaintiff filed a civil rights complaint under 42 U.S.C. § 1983, asserting violation of his constitutional rights by all Defendants. *Doc. 1.* In Count 1, Plaintiff alleges that Defendant Vasquez searched, arrested, and maliciously prosecuted Plaintiff without

probable cause in violation of his Fourth Amendment rights. *Id.* at ¶¶ 30–38. In Count 2, Plaintiff alleges that Defendant Rodriguez violated Plaintiff's Fourth Amendment rights by failing to intervene to prevent Defendant Vasquez's violation. *Id*. at ¶¶ 39–44. In Count 3, Plaintiff alleges that Defendant City of Carlsbad violated Plaintiff's Fourth Amendment rights by failing to adequately supervise and train its officers, including Defendants Vasquez and Rodriguez, regarding citizens' constitutional rights and New Mexico's criminal statutes. *Id*. at ¶¶ 45–50.

On February 6, 2020, in lieu of an answer, Defendants filed the present motion, seeking dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, Defendants seek summary judgment on all claims based on qualified immunity. On February 12, 2020, Defendants filed an unopposed motion to stay the proceedings, including discovery. *Doc. 6*. Consequently, all discovery and proceedings have been stayed pending the outcome of the present motion. *Doc. 10*.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard

does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556. Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief. *Id.* at 679.

On a motion to dismiss based on qualified immunity, courts must consider both (1) whether the facts alleged "make out a violation of a constitutional right," and (2) whether "the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington*, 643 F.3d at 732 (quoting *Pearson*, 555 U.S. at 232). The plaintiff carries the "heavy two-part burden." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation omitted). The Court need not answer these questions sequentially but may use its "sound discretion" in determining which prong to address first. *Pearson*, 555 U.S. at 236 (2009).

Although the *Twombly* standard may sometimes have "greater bite" in the qualified immunity context, the complaint need not include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citation omitted). Instead, the operative question is whether the plaintiff has "plead factual matter that, if taken as true, states a claim that [defendants] deprived him of his clearly established constitutional rights." *Iqbal*, 556 U.S. at 666.

### B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing "that there is an absence of evidence to

support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.

Notably, however, summary judgment motions based upon the defense of qualified immunity are reviewed differently from other summary judgment motions. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)). This is a "strict two-part test" that must be met before the defendant asserting qualified immunity again "bear[s] the traditional burden of the movant for summary judgment— showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (quoting *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000)) (internal quotations omitted). The Court may address the two prongs of the test in any order. *Pearson*, 555 U.S. at 236.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted). While it is not necessary to identify a case with identical facts, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). General principles "do not by themselves create clearly established law outside 'an obvious case.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). The test is whether the "right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela*, 138 S. Ct. at 1153 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).

In determining whether the plaintiff has met his or her burden to overcome a qualified immunity defense, the Court construes the facts in the light most favorable to the plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). In so doing, the Court must keep in mind three principles. First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists

as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. "An issue is

'genuine' if there is sufficient evidence on each side so that a rational trier of fact could

resolve the issue either way. An issue of fact is 'material' if under the substantive law it

is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353

F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Second, the Court must resolve

all reasonable inferences and doubts and construe all evidence in the light most

favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–54 (1999).

Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255.

"[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a

jury might return a verdict in his favor." *Id*. at 257. Nonetheless, at the summary

judgment stage, "a plaintiff's version of the facts must find support in the record."

*Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).

## III. UNDISPUTED FACTS

Because no discovery has yet taken place in this case, there are few facts in the

record that are proven and undisputed. The Court finds the following facts to be

undisputed for the purposes of Defendants' Motion for Summary Judgment:

1. On May 25, 2018, Plaintiff travelled to Eddy County, New Mexico to attend a

charity golf tournament. *Doc. 1* at ¶ 11; UMF L.[1] After the tournament, Plaintiff was the

passenger in a truck driven by Brodie Greene. *Doc. 1* at ¶ 12; *doc. 4-3*; *doc. 13-2*. Plaintiff

---

[1] The citation "UMF __" refers to the respective Undisputed Material Fact listed in *doc. 4*.

and Mr. Greene had evidently been drinking beforehand.  UMF C, L.

2.      Defendant Vasquez, an officer in the Carlsbad Police Department, observed Mr. Greene making an improper lane change and pulled him over.  UMF A–B.

3.      While speaking to Mr. Greene, Defendant Vasquez detected an odor of alcohol, and Mr. Greene admitted to having consumed four to five beers.  UMF C.  Defendant Vasquez ordered Mr. Greene to exit the car for a field sobriety test.  *Id*.

4.      Defendant Vasquez called for backup while he administered the test, and Defendant Rodriguez arrived to assist.  UMF D.

5.      During the field sobriety test, Plaintiff opened the passenger side door. Defendants ordered Plaintiff to close it and, eventually, Plaintiff did.  UMF F–H.

6.      Sometime after Plaintiff closed the door, he began shining a flashlight.  UMF I; RUMF I.[2]

7.      During the course of the stop and sobriety test, Plaintiff repeatedly asked why they were pulled over and requested to speak to "a supervisor."  *Doc. 13-1* at 1–2.

8.      Plaintiff argued with one or both of Defendants Vasquez and Rodriguez, and Defendants warned Plaintiff that he would be arrested.  *Doc. 1* at ¶ 20; RUMF K.

9.      Plaintiff was eventually arrested for violating NMSA 1978 § 30-22-1(A).  UMF M; *doc. 1* at ¶ 22.

---

[2] The citation "RUMF __" refers to the Plaintiff's response to the respective Undisputed Material Fact as found in *doc. 13*.

10.    After Plaintiff's arrest, Defendant Vasquez filed a criminal complaint against

Plaintiff, which was reviewed by Magistrate Judge D'Ann Read, who found the

complaint supported by probable cause.  UMF O–P; *doc. 4–3*.

11.    The case against Plaintiff was subsequently dismissed.  *Doc. 1* at ¶ 28.

## IV.    ANALYSIS

### A.  Claim Against Defendant Vasquez

An officer must have probable cause to believe a person has committed a crime in

order to make a warrantless arrest.  *Cortez v. McCauley,* 478 F.3d 1108, 1115 (10th Cir.

2007) (citation omitted).  "Probable cause to arrest exists only when the facts and

circumstances within the officers' knowledge, and of which they have reasonably

trustworthy information, are sufficient in themselves to warrant a man of reasonable

caution in the belief that an offense has been or is being committed."  *Id.* at 1116 (*quoting*

*United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)).  In the qualified immunity

context, the Court asks whether officers had "arguable probable cause" for the arrest,

meaning that "officers' conclusions rest on an objectively reasonable, even if mistaken,

belief that probable cause exists."  *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir.

2014) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)).

Where an arrest is based on a "purported state offense, state law is of inevitable

importance" in determining whether there has been a violation of federal constitutional

rights.  *Kaufman*, 697 F.3d at 1300.  "An unambiguous statute and a case from the state's

highest court analyzing that statute and confirming its plain meaning are sufficient to 'clearly establish' the contours of the Plaintiff's Fourth Amendment rights." *Id*. at 1302.

Great deference is accorded to a neutral magistrate's determination that a criminal charge is supported by probable cause. *United States v. Leon*, 468 U.S. 897, 914 (1984). Such deference "is not boundless," however, and "does not preclude inquiry into the knowing or reckless falsity of the affidavit on which [the] determination was based." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). "Nor will a warrant protect officers who misrepresent or omit material facts to the magistrate judge." *Stonecipher*, 759 F.3d at 1142.

The statute under which Plaintiff was charged reads, in pertinent part, as follows:

> Resisting, evading or obstructing an officer consists of:
>
> A. knowingly obstructing, resisting or opposing any officer of this state or any other duly authorized person serving or attempting to serve or execute any process or any rule or order of any of the courts of this state or any other judicial writ or process;
> B. . . . ;
> C. . . . ; or
> D. resisting or abusing any . . . peace officer in the lawful discharge of his duties.

NMSA 1978 § 30-22-1. Plaintiff was specifically charged under subsection (A); however, as Plaintiff points out, Defendants' case citations relate entirely to charges under subsection (D). The difference is critical because the two subsections prohibit different conduct. Subsection (A) prohibits "obstructing, resisting or opposing" an officer, while

subsection (D) prohibits "resisting or abusing" an officer. Thus, while obstructive conduct is validly prohibited under subsection (A), it is insufficient to support a charge under subsection (D). However, because Defendants need only establish "arguable" probable cause, qualified immunity would apply so long as Defendants had probable cause under at least one subsection. *See Boydston v. Isom*, 224 F. App'x 810, 815 n.3 (10th Cir. 2007) (unpublished) (basing probable cause determination on § 30-22-1(D) although charge was under § 30-22-1(A)).

Defendants argue that the charge under subsection (A) was valid because Defendants were attempting to execute a "rule." *Doc. 14* at 4. Defendants cite no authority for the proposition that a field sobriety test is the sort of "rule" that subsection (A) was intended to cover. On the contrary, there is case law to support finding that subsection (A) does not apply here. *New Mexico v. Wilson*, 169 P.3d 1184, 1197 (N.M. Ct. App. 2007) (no evidence that officer was serving process during drunk driving investigation to support conviction under § 30-22-1(A)).

Moreover, applying basic principles of statutory interpretation, it is clear that the rule must issue from a court. Read in full, "any rule" refers to "any rule or order of any of the courts of this state." This interpretation is confirmed by the final catchall category of "any *other* judicial writ or process," NMSA 1978 § 30-22-1(A) (emphasis added). *See Noscitur a sociis*, Black's Law Dictionary (11th ed. 2009) ("A canon of construction holding that the meaning of an unclear word or phrase, esp. one in a list, should be

determined by the words immediately surrounding it.").  Thus, subsection (A) applies

where, for example, an officer is trying to serve a lawsuit or to execute a warrant.  This

commonsense reading is confirmed by the available case law considering subsection

(A).  *Wilson*, 169 P.3d at 1197; *Boydston*, 224 F. App'x at 815 n.3 (noting that subsection

(A) "applies to officers attempting to serve or execute an order of the court," in contrast

to subsection (D), "which applies to officers discharging their lawful duties").  *See also*

*Youbyyoung Park v. Gaitan*, 680 F. App'x 724, 734 (10th Cir. 2017) (unpublished)

(considering charge under 30-22-1(A) for obstructing execution of search warrant);

*United States v. Coca*, 704 F. App'x 744, 747–48 (10th Cir. 2017) (unpublished) (same for

arrest warrant).  Because Defendants were not executing any court process or rule, the

arrest cannot be justified under subsection (A).

There are three categories of conduct prohibited by subsection (D).  *United States*

*v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019).  First, the statute "primarily [prohibits]

physical acts of resistance."  *New Mexico v. Wade*, 667 P.2d 459, 460 (N.M. Ct. App. 1983).

Second, the use of the word "abusing" has been construed to include "fighting words"

(but not obscenities or yelling).  *Id*. at 460–62.  Third, § 30-22-1(D) prohibits refusing to

comply with an officer's orders.  *New Mexico v. Jimenez*, 392 P.3d 668, 682 (N.M. Ct. App.

2017).  The available case law also provides examples of conduct that does *not* violate

subsection (D).  *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1286 (10th Cir. 2008) (no

probable cause for arrest under § 30-22-1(D) for chanting "shame" and posing questions

to an officer); *Storey v. Taylor*, 696 F.3d 987, 993 (10th Cir. 2012) (refusal to obey *unlawful* order not a violation of § 30-22-1); *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217 (10th Cir. 2008) (evasive responses to questioning not a violation of § 30-22-1). Furthermore, the New Mexico Legislature's decision to narrowly draw its resisting statute is consistent with the rationale of New Mexico's courts that police officers "are supposed to exercise restraint" in the face of offensive or obstreperous conduct. *Wade*, 667 P.2d at 462; *see also New Mexico v. Correa*, 222 P.3d 1, 7 (N.M. 2009). Obstructive conduct, without more, is insufficient grounds to effect an arrest under subsection (D).

With these principles in mind, the Court turns to the material facts of this case. To begin, the Court finds that Plaintiff's conduct, even viewed in the light most favorable to Plaintiff, was probably obstructive. Plaintiff repeatedly argued with Defendants over the validity of their actions, although he does not now dispute that Mr. Greene made an improper lane change or that Mr. Greene admitted to drinking four or five beers before driving. *See* RUMF B–C. During the field sobriety test, Plaintiff opened his door, which Defendants treated as a potential safety threat. Plaintiff disputes that his actions presented a safety threat; however, it was not Plaintiff's job to assess the safety threat but Defendants'. As Defendants point out, routine traffic stops can pose deadly hazards to officers. *Doc. 14* at 3 n.2; *Maryland v. Wilson*, 519 U.S. 408, 414 (1997); *United States v. Rochin*, 662 F.3d 1272, 1273 (10th Cir. 2011) ("Every year, thousands of law enforcement officers are assaulted—and many are killed—in what

seem at first to be routine stops for relatively minor traffic infractions.").  It is reasonable

for officers to order a passenger to remain in the car to minimize potential threats.  In

light of Plaintiff's contentiousness throughout the encounter, it was also reasonable for

Defendants to interpret Plaintiff's act of shining the flashlight as a further attempt to

distract and disrupt Defendants, regardless of Plaintiff's actual intentions.  *Stonecipher*,

759 F.3d at 1141 (officers may rely on objectively reasonable but mistaken beliefs in

finding probable cause).

Although Plaintiff's conduct may have been obstructive, it does not follow that it

was prohibited by New Mexico's resisting statute.  As discussed, § 30-22-1(A) requires

the officer to be serving or executing a judicial process or rule, while § 30-22-1(D)

requires physical resistance, fighting words, or non-compliance with a lawful order.

Defendants were not executing a judicial process or rule, and Defendants do not assert

that Plaintiff engaged in physical resistance or fighting words.  Thus, this case hinges on

whether Plaintiff failed to comply with Defendants' lawful orders.  The facts pertinent

to that question are disputed and unresolved by the evidence in the record.

In the argument section of Defendants' motion, they repeatedly assert that

Plaintiff did not obey their orders.  However, in their Undisputed Material Facts,

Defendants fail to include *any* statement regarding specific orders they gave to Plaintiff

that he failed to obey.  First, Defendants' Undisputed Material Facts do not include any

statement that Plaintiff failed to obey the order to shut his door.  UMF F–H.  To the

contrary, Defendants assert that Plaintiff "eventually" closed the door. UMF H. In their reply to Plaintiff's response, Defendants attempt to argue that "Plaintiff does not deny that he did not shut the door when Officer Rodriguez told him to do so." *Doc. 14* at 3. But Plaintiff cannot dispute a fact not asserted in Defendants' Undisputed Material Facts. In any event, Plaintiff repeatedly asserts in his argument that he obeyed all of Defendants' orders. Additionally, Defendants do not state that they gave Plaintiff any order to stop shining the flashlight or that Plaintiff failed to turn off the flashlight. UMF I. Plaintiff asserts that he turned off the flashlight promptly without having received any order from Defendants to do so. RUMF I. Finally, Defendants state that Plaintiff was yelling at Mr. Greene, UMF J, but they do not state that his yelling prevented Defendants from proceeding with the sobriety test. *See Wade*, 667 P.2d at 460 (reversing conviction under § 30-22-1(D) where defendant's alleged yelling did not prevent officer from interviewing witness). Plaintiff denies yelling at Mr. Greene and provides an affidavit from Mr. Greene attesting that Mr. Greene never heard Plaintiff yell. RUMF J; *doc. 13-2* at ¶ 4. In lieu of articulating any specific orders that Plaintiff was given and that he refused to obey, Defendants generally state that they gave Plaintiff "multiple warnings to stop interfering with the investigation." UMF K. Plaintiff's alleged interference is only relevant insofar as it is prohibited by § 30-22-1(D), and Defendants fail to conclusively establish that Plaintiff's conduct violated that statute.

Finally, Defendants urge the Court to treat Magistrate Judge Read's probable

cause determination with "great deference." *Doc. 4* at 8. However, Plaintiff alleges that Defendant Vasquez's criminal complaint was "inaccurate and misleading" insofar as it states that Plaintiff refused to obey Defendants' orders. *Doc. 13* at 16. Because the facts regarding Plaintiff's noncompliance are disputed, the Court will not defer to Magistrate Judge Read's determination.

To be clear, if Defendants gave Plaintiff orders to close his door, turn off the flashlight, and lower his volume to allow Defendants to communicate with Mr. Greene, such orders were lawful. And if Plaintiff failed to comply with such orders, then probable cause existed that Plaintiff violated NMSA 1978 § 30-22-1(D). Because these facts are disputed and the scant evidence on the record fails to conclusively establish one version of facts over another,[3] the Court cannot resolve Plaintiff's unlawful arrest claim at this time. Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's claim against Defendant Vasquez.

### B. Claim Against Defendant Rodriguez

If the Court considers material outside the pleadings, a 12(b)(6) motion converts to a motion for summary judgment. *Price v. Philpot*, 420 F.3d 1157, 1167 (10th Cir. 2005). Because the parties have adduced evidence regarding the claims against Defendants Vasquez and Rodriguez, the Court must treat Defendants' motion as it pertains to the

---

[3] For example, the summary judgment record does not include any video or audio recording of the relevant events. *Compare with Scott v. Harris*, 550 U.S. 372 (2007).

individual Defendants as one for summary judgment.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). An officer who observes or has reason to know that a citizen has been arrested without probable cause may be liable for failing to prevent the unlawful arrest from occurring. *Id*. "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id*. (quoting *Anderson*, 17 F.3d at 557).

The undisputed facts establish that Defendant Rodriguez was witness to all the same conduct as Defendant Vasquez and present for Plaintiff's arrest. If, as Plaintiff contends, he complied with Defendants' orders, then Defendant Rodriguez was equipped with sufficient information to know that Plaintiff did not violate § 30-22-1. Furthermore, the Court has no difficulty determining that Defendant Rodriguez had a reasonable opportunity to intervene. Plaintiff and Defendant Vasquez apparently argued for some time, and Defendant Vasquez warned Plaintiff at least once that he would be arrested. *Doc. 1* at ¶ 20.

Because the Court cannot currently resolve the question of whether Plaintiff's arrest was unlawful, it also cannot resolve whether Defendant Rodriguez committed a constitutional violation by failing to prevent the arrest. Therefore, summary judgment

is also denied as to the claim against Defendant Rodriguez.

### C. Claim Against Defendant City of Carlsbad

Municipalities cannot be held liable for the acts of their employees under 42 U.S.C. § 1983 on the basis of a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978); *see also Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Instead, "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

In order to meet the second element of his burden, Plaintiff must "identify a government's policy or custom that caused the injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (internal quotations and citation omitted). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or *deliberately indifferent training or supervision*." *Id.* at 770 (emphasis added). For liability to attach, the plaintiff must demonstrate a "direct causal link between the custom or policy and the violation alleged." *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997) (internal citations omitted). Generally, a "single incident of unconstitutional activity is not sufficient to

impose liability" under *Monell*. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Liability based on a failure to train requires a "conscious" choice, amounting to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)); *see also Lewis v. McKinley Cty. Bd. of Cty. Comm'rs*, 425 F. App'x 723, 726 (10th Cir. 2011) (unpublished) (noting that a conscious choice may be established "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation") (citation omitted).

Because neither party adduced any evidence regarding the municipality's liability, the Court treats this claim under 12(b)(6) alone. In his complaint, Plaintiff alleges that it was the policy or custom of Defendant City "to fail to adequately supervise and train" its officers. *Doc. 1* at ¶ 48. Plaintiff alleges that this policy or custom "exhibit[ed] deliberate indifference" to individuals' constitutional rights. *Id*. at ¶ 47. And Plaintiff alleges that Defendant City's failure to adequately supervise and train its officers was "the moving force" behind the violation of Plaintiff's civil rights. *Id*. at ¶ 49. Plaintiff thus incorporates all the required elements of a claim for municipal liability under § 1983. However, "a formulaic recitation of the elements of a cause of action" does not suffice to state a claim for relief. *Twombly*, 550 U.S. at 555. The complaint must plead sufficient factual allegations to "raise a right to relief above the speculative level." *Id*.

In the "Factual Background" section of Plaintiff's complaint, the only allegation specific to the Defendant City is that it is "evident" that the individual Defendants "had not been properly trained in accordance with state and federal law regarding free speech, investigations, arrests, and malicious prosecution." *Doc. 1* at ¶ 29. The Court finds this allegation conclusory and insufficient to establish a constitutional violation above the speculative level. Plaintiff fails to include any factual allegations to explain the nature of the inadequate training or to indicate that Plaintiff's allegedly unlawful arrest was more than an isolated incident.

As it stands, Plaintiff's complaint establishes only the "mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, by the Defendant City. Therefore, the Court will grant Defendants' motion to dismiss as to the claim against Defendant City of Carlsbad.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment on Plaintiff's Complaint and for Qualified Immunity (*doc. 4*) is GRANTED in part and DENIED in part.

IT IS HEREBY ORDERED that Count 3 of Plaintiff's complaint against Defendant City of Carlsbad is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**